Charles Edward Lincoln, III
603 Elmwood Place, Suite #6
Austin, Texas 78705
Telephone: (512) 968-2500
E-mail: charles.lincoln@rocketmail.com
Plaintiff *in propia persona*
pending reconsideration of this Court's denial of
his attorney's admission *pro hac vice*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA,
### SOUTHERN DIVISION (Santa Ana)

| | |
|---|---|
| CHARLES EDWARD LINCOLN, III<br><br>                 Plaintiff,<br><br>vs.<br><br><br>DAYLIGHT CHEMICAL INFOR-MATION SYSTEMS, INC., et al,<br><br>                 Defendants. | CIVIL ACTION NUMBER:<br><br>**8:10-CV-01573 AG (PLAx)**<br><br>**Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011 Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66 Order Denying Philip J. Berg's Application to Appear *Pro Hac Vice***<br><br>Date of Hearing:  April 18, 2011<br>Time of Hearing:  10:00 a.m.<br>Location:         Courtroom 10D |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Please take notice** that at 10:00 a.m. on Monday, April 18, 2011, or as soon thereafter as may be heard, Plaintiff Charles Edward Lincoln, III, will move and request that this Court grant his Motion to Extend, Continue, or Suspend

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

1

Deadlines, together with Plaintiff's Motion for Reconsideration of this Court's Order (Doc. #66) Denying the Application of Philip J. Berg to appear *Pro Hac Vice* as Counsel for Plaintiff.

Wherefore comes now the Plaintiff, Charles Edward Lincoln, III, with this Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially (but not limited to) the March 16, 2011 Deadline to File Plaintiff's Second Amended Complaint, and Plaintiff's Motion for Reconsideration of Order (Doc. #66) Denying Application of Philip J. Berg to Appear **Pro Hac Vice** as Plaintiff's Counsel in this case.

As grounds in support of his Motion, Plaintiff attaches, cites, and incorporates by reference as if fully copied and restated herein Exhibits A, B, C, & D to this Motion, to wit: Plaintiff's letters of conference with Defense Counsel dated Friday March 4, 2011, and Monday March 7, 2011, which have gone utterly and abjectly unanswered as of 5:34 a.m. on the morning of Monday, March 14, 2011 (Exhibits A & B), Plaintiff's own declaration in support of this Motion (Exhibit C), and the text of the U.S. Supreme Court case of U.S. v. Gonzalez-Lopez, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006)(Exhibit D).

Plaintiff submits that the Court has unfairly deprived him of his choice of counsel in a case requiring specialized knowledge and expertise regarding one of the parties defendant in particular, specifically Dr. Orly Taitz, Esq., who presents special circumstances which cannot be readily appreciated except by those few individuals with direct experience of her litigation tactics and out-of-court conduct and behavior. Philip J. Berg is in effect a "specialist" in the problems presented by litigation with Dr. Orly Taitz and Plaintiff Charles Edward Lincoln is a plaintiff with "special and individualized needs" with regard to his claims and litigations against Dr. Orly Taitz.

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

2

It is recognized that certain circumstances create a specialized environment of litigation in which only certain attorneys with a certain level and types of experience and skill can effectively represent injured clients. Attorneys routinely specialize in medical malpractice relating to cosmetic surgery or cardiac or pulmonary disorders relating to asbestos or airlines. Other attorneys specialize in litigation against the armed forces or corps of engineers under the Federal Tort Claims Act or in employment discrimination cases or in reverse "affirmative action" discrimination against educational institutions of higher learning.

Plaintiff submits that certain individuals or groups of defendants are so unique and idiosyncratic that they present special and unique circumstances which require specialized knowledge and experience. Plaintiff submits that Dr. Orly Taitz and her associates are such individuals and constitute such a group of defendants that, to litigate against them effectively, he needs specialized counsel.

Plaintiff submits that the Court did not consider the Plaintiff's special circumstances or special needs in entering its March 2, 2011, order denying Philip J. Berg's application to appear ***pro hac vice*** in this case. The court having failed to consider these special circumstances, Plaintiff moves and prays that he be granted the opportunity to present the special circumstances and problems presented by litigation against Dr. Orly Taitz, such that reconsideration is warranted under the L.R. 7-18(c) of the local rules of the Central District of California, to wit:

> ***L.R. 7-18 Motion for Reconsideration.*** A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) ***a manifest showing of a failure to consider material facts presented to the Court before such decision.*** No motion for reconsideration shall in any

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

3

1  manner repeat any oral or written argument made in support of or in
2  opposition to the original motion.

Local Rules of the Central District, *Bold & Italic Emphasis added.*

3  Plaintiff admits that it might in part be his fault that the Court did not

4  consider his special needs for Philip J. Berg as counsel against Dr. Orly Taitz

5  solely because Plaintiff did not conceive or imagine it possible that this Court

6  would deny Mr. Berg's application, especially in light of (1) the fact that Mr. Berg

7  had been admitted pro hac vice to represent Plaintiff in related proceedings in U.S.

8  District Court in Florida, without objection from Dr. Taitz, and (2) the fact that Dr.

9  Orly Taitz' recent barrage of mostly irrelevant motions constitute a plainly

10 improper attempt to disqualify Mr. Berg precisely and solely because Dr. Taitz

11 perceives herself threatened by Mr. Berg's personal knowledge and specialized

12 familiarity with her peculiar habits and modes of operation.

13 Plaintiff and Mr. Philip J. Berg have a long-term, ongoing client-attorney

14 relationship based on the need to defend against Dr. Orly Taitz and her seemingly

15 infinite financial resources to litigate frivolously which are supplied by her co-

16 Defendant husband-Yosef Taitz and his company co-Defendant Daylight Chemical

17 Information Systems, Inc., which alone make possible Dr. Taitz continuing assault

18 on all those who were her former and natural allies. (Philip J. Berg & Lisa Liberi

19 were never actual allies or associates of Dr. Orly Taitz, unlike Plaintiff Charles E.

20 Lincoln in this case and Plaintiff Lisa Ostella in the case originally filed in the

21 Eastern District of Pennsylvania, but Philip J. Berg and his assistant Lisa Liberi are

22 those who can be credited as the founders of the constitutional eligibility

23 movement to which Dr. Orly Taitz attached herself, seemingly for solely

24 destructive purposes.

25 A Defendant should not be empowered to disqualify a Plaintiff's attorney

26 simply because she dislikes that attorney or because that attorney knows too much

27

28

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

4

about her. Disqualification of counsel is only proper based on conflicts of interest and prior prior representation, and obviously Dr. Orly Taitz cannot and has not alleged any such status on the part of Philip J. Berg.

Furthermore, Dr. Orly Taitz never objected to Berg's appearance on behalf of Charles Edward Lincoln before the Honorable William P. Dimitrouleas in the United States District Court for the Southern District of Florida and Defendant Taitz is therefore estopped from objecting now, merely because she stands as a Defendant to loose so much more than she did when merely engaged in the business of malicious prosecution in Florida.

Careful examination of Justice Scalia's opinion in the case of *U.S. v. Gonzalez-Lopez*, will show that the Defendant's counsel in that case was accused of an ethical violation in that very case (dual examination of a single witness), and the Defendant made no showing whatsoever of special need for the disqualified counsel's knowledge or skill. The Plaintiff has no knowledge whatsoever of the charges against Mr. Berg in Pennsylvania on which Dr. Orly Taitz has sought to focus this Court's attention. The simple truth is that Mr. Berg has never actually been sanctioned monetarily nor scolded nearly so heavily as was Dr. Orly Taitz for unethical conduct during the past two-three years in any court, and it is manifestly unjust and unfair that Plaintiff should be denied not only his choice, but possibly his only realistic option for competent counsel with sufficient knowledge and experience actually to deal with Dr. Orly Taitz' outrageous peculiarities and shenanigans, which characterize her behavior and shape the conduct and actions of her associates both in and out of court.

This Court simply did not consider that Dr. Taitz presents a specialized problem and that Philip J. Berg is an especially, uniquely, well-qualified lawyer to deal with her. For all these reasons, reconsideration is appropriate and the Court

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

5

should reverse its order of March 2, 2011, and allow Philip J. Berg to appear as counsel for Plaintiff in this case.

## REQUEST TO EXTEND, CONTINUE, OR SUSPEND ALL DEADLINES

In the meantime, Plaintiff moves and prays that this Court will either (1) extend until not sooner than Wednesday, June 1, 2011, the deadline set of 30 days after February 14, 2011 (i.e. March 16, 2011) for Plaintiff to file his Second Amended Complaint in this case, to enable Plaintiff to obtain alternate counsel in this case, (2) to continue all other deadlines set by the Court's recent scheduling order for at least a corresponding two and a half months, including discovery cutoff, dispositive motion cutoff, expert witness cutoff, and of course, trial setting, or (3) that the court will simply but indefinitely suspend all deadlines until either granting this Plaintiff's Motion to Reconsider Philip J. Berg's application for admission *Pro Hac Vice* or until Plaintiff can find alternate counsel, whichever even comes first.

## SPECIFIC REQUEST TO CONTINUE MARCH 21, 2011 HEARING

Plaintiff in particular moves and requests that this Court reconsider its order denying Philip J. Berg's application without hearing prior to the hearing set one week from today for March 21, 2011, on Defendant Taitz' Motion for Sanctions and this Plaintiff's Motion to Strike that Motion for Sanctions. If Philip J. Berg is not counsel at that hearing, he will still attend as a witness regarding Dr. Taitz' factual basis for sanctions, which in part are aimed against him and his staff. However, the Court should take notice that Plaintiff cannot possibly adequately represent himself at that hearing. Under the historical circumstances giving rise to this case, the Court cannot reasonably ask Plaintiff, regardless of his professional or educational background, to approach and dispassionately examine Dr. Taitz and her husband as witnesses. It is too much to ask. It would be utterly unreasonable.

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

6

This is not a case where federal jurisdiction is predicated on a car wreck or medical malpractice on a military base or national park.   This is a case involving the integrity, honor and dignity of the Federal Courts and the degree to which Dr. Orly Taitz has besmirched that integrity, honor, and dignity in no small part by her treatment of this Plaintiff and misuse of her relationship with this Plaintiff, parallel to but readily distinguishable from her abusive treatment of others to whom she had a less personal relationship.   Dr. Orly Taitz poses a threat of continuing criminal conduct which this Court cannot readily ignore, and which this U.S. District Court should not simply seek to pass off to the State Courts of California, Florida, or New Jersey (even though all three have *lex locus delicti* and/or *lex locus contractu* jurisdiction).

If this Court does not allow Philip J. Berg to represent Plaintiff at the March 21, 2011 hearing, and the Court should note that Plaintiff's local counsel (appearing on the Docket report as Philip J. Berg's co-Counsel) Gary Kreep has steadfastly stated that he remains in very poor health and is quite simply not well enough to pick up for Mr. Berg, that he merely signed on in a supportive or sponsoring role, then this Court should continue the March 21, 2011 hearing until such time as the Court can grant Plaintiff's Motion to Reconsider Mr. Berg's application to appear as Plaintiff's counsel, or until after June 1, 2011, so that Plaintiff can obtain alternative counsel under circumstances where few if any attorneys will consider entering this case on terms similar to those which Mr. Berg accepted (cost plus contingency fee).

WHEREFORE, Plaintiff moves and requests that this Court extend all deadlines by two months and two weeks or simply suspend all deadlines until Plaintiff can obtain substitute counsel, without prejudice to the rights of Plaintiff or any other party, or in the (much preferred) alternative that the Court simply

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

7

reconsider its March 2, 2011 order (Doc. #66) denying Philip J. Berg's application for admission pro hac vice, and merely extend all deadlines by 2-3 weeks to compensate for the "down-time" and chaotic confusion created by this Court's denial of Plaintiff's choice of counsel---which happens to be the Plaintiff's only reasonable or appropriate choice of counsel in this case.

Respectfully submitted,

Dated: March 14, 2011

Charles Edward Lincoln, III
603 Elmwood Place, Suite #6
Austin, Texas 78705
Telephone: (512) 968-2500
E-mail: charles.lincoln@rocketmail.com
Plaintiff *in propia persona*

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

8

Charles Edward Lincoln, III
603 Elmwood Place, Suite #6
Austin, Texas 78705
Telephone: (512) 968-2500
E-mail: charles.lincoln@rocketmail.com
Plaintiff *in propia persona* pending reconsideration
of the court's denial of his
attorney's admission *pro hac vice*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA,
### SOUTHERN DIVISION (Santa Ana)

| | |
|---|---|
| CHARLES EDWARD LINCOLN, III | CIVIL ACTION NUMBER: |
| Plaintiff, | **8:10-CV-01573 AG (PLAx)** |
| vs. | **Certificate of Service** |
| | Date of Hearing:  April 18, 2011 |
| DAYLIGHT CHEMICAL | Time of Hearing: |
| INFORMATION SYSTEMS, INC., et al, | Location:  Courtroom 10D |
| Defendants. | |

I, Charles Edward Lincoln, III hereby certify that I served a true and correct copy of Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, this Court's Order denying Philip J. Berg's Application to Appear Pro Hac Vice, were served via facsimile transmission and/or e-mail on this Monday the 14th day of March 2011 upon the following attorneys of record:

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

9

**Jonathan Ross,**
jross@bglawyers.com
**Arnold Levine,**
alevine@bglawyers.com
**Mark I Melo**
mmelo@bglawyers.com
Bradley and Gmelich
700 N Brand Blvd 10th Fl
Glendale, CA 91203-1202
Telephone: 818–243–5200; Fax: 818–243–5266
*Attorneys for Defendants, Yosef Taitz and*
*Daylight Chemical Information Systems, Inc.*

**Orly Taitz.** Orly Taitz Law Offices
29839 Santa Margarita Parkway, Suite # 100
Rancho Santa Margarita, California 92688,
Telephone 949-683-5411
Facsimile 949-766-7603
Email: dr_taitz@yahoo.com
orly.taitz@gmail.com
*Attorney for Defendants, Appealing Dentistry; Defend our*
*Freedoms Foundations, Inc.; and Orly Taitz, Inc.*

**William C Haggerty, Telephone: 562–983–2500**
Email: bill@fwhb.com
**Katherine M Harwood, Telephone:** 562–983–2512
Email: kharwood@fwhb.com
Ford Walker Haggerty & Behar
1 World Trade Center, 27th Fl
Long Beach, CA 90831–2700
*Attorneys for Defendants, Dr. Orly Taitz, Esq., and Law Offices of Dr. Orly Taitz, Esq.*

Dated:  March 14, 2011

Charles Edward Lincoln, III, *pro se*
603 Elmwood Place, Suite #6
Austin, Texas 78705
Telephone: (512) 968-2500
E-mail: charles.lincoln@rocketmail.com

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A:
# Friday
# March 4, 2011
# Letter Seeking Agreement
## *L.R. 7-3 Conference of Counsel Prior to Filing of Motions*

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

11

**From:** Charles Edward Lincoln III (lincoln_for_california@rocketmail.com)
**To:** jross@bglawyers.com; alevine@bglawyers.com; mmelo@bglawyers.com; Dr_taitz@yahoo.com;
**Date:** Fri, 4 March, 2011 19:29:07
**Cc:** bill@fwhb.com; kharwood@fwhb.com; pallares@lbbslaw.com; BECKER@lbbslaw.com;
orly.taitz@gmail.com; philjberg@gmail.com; usjf@usjf.net;
**Subject:** Request to suspend deadlines pending reconsideration

Dear Ms. Harwood, Dr. Taitz, & Messers. Haggerty, Levine, Melo, & Ross:
In Case No. 10-cv-01573-AG, Docket Entry #66, entered yesterday, March 3, 2011,
Judge Andrew Guilford has denied Philip J. Berg's application to appear ***pro hac vice***. At
the same time I notice that Judge Guilford granted a substitution of counsel whereby Ms.
Harwood and Mr. Haggerty substituted for Messrs. Pallares & Becker, so Dr. Taitz is
being allowed HER choice of counsel. Judge Guilford, on page 2, the last line his Docket
Entry #66 order, specifically ordered:

# "All pending dates remain as scheduled."

This creates an impossibly unfair and unjust situation, especially with regard to Judge
Guilford's Order (Docket Entries #41 & 44) setting a deadline of 30 days from February
14, 2011(that would be Wednesday March 16, 2011) for the filing of a Second Amended
Complaint in this case, and I am writing to ask you all to join me by stipulation (or at
least non-opposition) to suspend all deadlines in this case indefinitely until my counsel
situation can be resolved. It would also be necessary, in the interests of justice, to
continue the hearing set for Monday, March 21, 2011, on Dr. Taitz' Motion for Sanctions
and my motion to strike the same. These matters are largely focused on Mr. Philip J.
Berg and his staff, and it would be preposterous to ask me to represent myself without
him at this hearing.
I am also attaching the Syllabus and Opinions in ***US v. Gonzalez-Lopez***, 548 U.S. 140
(2006).
I would ask on all of you to reflect as attorneys whose relationship with clients is your
stock and trade, how critical is the on-going relationship between an attorney and client.
I have an ongoing attorney-client relationship with Philip J. Berg which is critical to my
ability to seek justice and redress in this case.
Last year, when Dr. Orly Taitz wrongfully (in fact ridiculously) accused me of forging
her signature on a routine court filing, Dr. Philip J. Berg was willing to appear and defend
me. He was admitted Pro Hac Vice in the U.S. District Court for the Southern District of
Florida without any objection or protest from Dr. Orly Taitz. I would say that because of
her silence in that case, wherein she was the complainant, she is estopped from
complaining now. She is using her opposition to the Motion for admission Pro Hac Vice
as a way of disqualifying my choice in counsel....but he has under no circumstances
subject to disqualification (see, e.g. ***In Re American Airlines,*** 972 F.2d 604 (1992)).
The history underlying is too complicated for most attorneys even to want to grasp. And
no one who has not had direct dealings with Orly Taitz would ever believe it, anyhow.
Just for example, after hiring me and then giving only her actions and promises of love
and personal and professional commitment to me, Dr. Orly Taitz ignored my advice
and was sanctioned $20,000.00 in a case I told her she never should have filed at all in

Georgia, after insisting that she had to put on a show for her retinue of "followers" rather than follow the path of cautious research and judicial prudence.

Philip J. Berg has never been sanctioned to anything close to that degree, and yet the Court allows Orly Taitz to represent her own shadow entities and denies him admission *pro hac vice*.

It is utterly and totally unfair that Orly Taitz is allowed her choice of counsel but that I be denied mine. I would urge you to examine the text of 548 U.S. 140 (2006) and agree and stipulate with me that it is MORE important for a Civil Plaintiff, who bears the burden of proof in every phase of litigation, to have a personally selected counsel who has direct and personal familiarity with the whole range and potential of Orly Taitz' behavioral range.

In any event, I cannot possibly represent myself in this case and it is almost impossible that I could find any attorney as well-qualified and competent as Philip J. Berg to represent me in this case. It is especially relevant that he is willing to accept this case on a cost & expenses + contingent fee only basis. In effect, I will be deprived of my right to counsel if Mr. Berg is not allowed to represent me in this case, and there is no good reason that he should not be so allowed. The Court made no findings against him or his qualifications whatsoever in its order, Docket Entry #66, and then allowed Dr. Orly Taitz to have her counsel of choice in a series of four orders with Docket Entries #67, 68, 69, 70.

For all these reasons, I would ask you all and each to stipulate with me BOTH to a suspension or extension of all deadlines, but especially the March 16, 2011, deadline for the filing of Plaintiff's Second Amended Complaint. The hearing now set for March 21, 2011, should also be continued. That hearing on Dr. Taitz' Motion for Sanctions is largely directed at Mr. Berg, and I cannot be expected to represent myself in that hearing without Mr. Berg.

Because a civil Plaintiff bears the burden of proof on all subjects in Civil Litigation, I think that the logic of *U.S. v. Cuauhtemoc Gonzalez-Lopez*, applies twenty-times more in civil cases than in criminal cases, where the defendant bears no burden of proof at all except as to affirmative defenses: if a criminal conviction must be vacated automatically where a defendant's choice of counsel is denied, then *a fortiori* all civil proceedings would be completely null and void if a Plaintiff's choice of counsel is denied. Dr. Orly Taitz must not be used to disqualify my choice of counsel merely because having knowledgeable counsel, familiar with her "routine", is inconvenient to her.

If the Court does not ultimately allow Mr. Berg to appear on my behalf, I would ask that you all agree and stipulate with me that, in essence, the denial of my choice of counsel is a controlling issue in this case, a nearly dispositive decision, which is subject to interlocutory appeal under 28 U.S.C. Section 1292(b):

**(b)** When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action

*Charles Edward*

may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

*Lincoln, III*

*"Ich bin der Geist der stets verneint"*

*Deo Vindice/Tierra Limpia*
*http://charleslincoln3.wordpress.com*

Telephone: 512-968-2500
E-mail: lincoln_for_california@rocketmail.com
In case of emergency call Peyton Yates Freiman (Texas)
at 512-968-2415 or e-mail him at freimanthird@gmail.com

---

**Matthew 10:34-39**

**Think not that I am come to send peace on earth: I came not to send peace, but a sword.** For I am come to set a man at variance against his father, and the daughter against her mother, and the daughter in law against her mother in law. **And a man's foes shall be they of his own household.**

He that loveth father or mother more than me is not worthy of me: and he that loveth son or daughter more than me is not worthy of me. **And he that taketh not his cross, and followeth after me, is not worthy of me.** He that findeth his life shall lose it: and he that loseth his life for my sake shall find it.

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B:
# Monday
# March 7, 2011
# Renewed Attempt to Confer

## *L.R. 7-3 Conference of Counsel Prior to Filing of Motions*

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

12

**From:** Charles Edward Lincoln III (lincoln_for_california@rocketmail.com)
**To:** jross@bglawyers.com; alevine@bglawyers.com; mmelo@bglawyers.com; Dr_taitz@yahoo.com;
**Date:** Mon, 7 March, 2011 22:48:23
**Cc:** bill@fwhb.com; kharwood@fwhb.com; philjberg@gmail.com; usjf@usjf.net;
orly.taitz@gmail.com;
**Subject:** Fw: Request to suspend deadlines pending reconsideration

*I am resending this email in the hopes that someone will respond either to me directly at 512-968-2500 or to Mr. Berg at 610-825-3134 and support this request for suspension of deadlines....*

----- Forwarded Message ----
**From:** Charles Edward Lincoln III <lincoln_for_california@rocketmail.com>
**To:** Jonathan Ross <jross@bglawyers.com>; Arnold Levine <alevine@bglawyers.com>; Mark I. Melo <mmelo@bglawyers.com>; Dr. Orly Taitz <Dr_taitz@yahoo.com>
**Cc:** bill@fwhb.com; kharwood@fwhb.com; William Pallares <pallares@lbbslaw.com>; Bart Becker <BECKER@lbbslaw.com>; Orly Taitz <orly.taitz@gmail.com>; Philip J. Berg <philjberg@gmail.com>; Gary Kreep <usjf@usjf.net>
**Sent:** Fri, 4 March, 2011 19:29:07
**Subject:** Request to suspend deadlines pending reconsideration

Dear Ms. Harwood, Dr. Taitz, & Messers. Haggerty, Levine, Melo, & Ross:
In Case No. 10-cv-01573-AG, Docket Entry #66, entered yesterday, March 3, 2011, Judge Andrew Guilford has denied Philip J. Berg's application to appear *pro hac vice*. At the same time I notice that Judge Guilford granted a substitution of counsel whereby Ms. Harwood and Mr. Haggerty substituted for Messrs. Pallares & Becker, so Dr. Taitz is being allowed HER choice of counsel. Judge Guilford, on page 2, the last line his Docket Entry #66 order, specifically ordered:

## "All pending dates remain as scheduled."

This creates an impossibly unfair and unjust situation, especially with regard to Judge Guilford's Order (Docket Entries #41 & 44) setting a deadline of 30 days from February 14, 2011(that would be Wednesday March 16, 2011) for the filing of a Second Amended Complaint in this case, and I am writing to ask you all to join me by stipulation (or at least non-opposition) to suspend all deadlines in this case indefinitely until my counsel situation can be resolved. It would also be necessary, in the interests of justice, to continue the hearing set for Monday, March 21, 2011, on Dr. Taitz' Motion for Sanctions and my motion to strike the same. These matters are largely focused on Mr. Philip J. Berg and his staff, and it would be preposterous to ask me to represent myself without him at this hearing.
I am also attaching the Syllabus and Opinions in *US v. Gonzalez-Lopez*, 548 U.S. 140 (2006).
I would ask on all of you to reflect as attorneys whose relationship with clients is your stock and trade, how critical is the on-going relationship between an attorney and client. I have an ongoing attorney-client relationship with Philip J. Berg which is critical to my ability to seek justice and redress in this case.
Last year, when Dr. Orly Taitz wrongfully (in fact ridiculously) accused me of forging her signature on a routine court filing, Dr. Philip J. Berg was willing to appear and defend

me.  He was admitted Pro Hac Vice in the U.S. District Court for the Southern District of Florida without any objection or protest from Dr. Orly Taitz.  I would say that because of her silence in that case, wherein she was the complainant, she is estopped from complaining now.  She is using her opposition to the Motion for admission Pro Hac Vice as a way of disqualifying my choice in counsel....but he has under no circumstances subject to disqualification (see, e.g. *In Re American Airlines,* 972 F.2d 604 (1992)).
The history underlying is too complicated for most attorneys even to want to grasp.  And no one who has not had direct dealings with Orly Taitz would ever believe it, anyhow.  Just for example, after hiring me and then giving only her actions and promises of love and personal and professional commitment to me, Dr. Orly Taitz ignored my advice and was sanctioned $20,000.00 in a case I told her she never should have filed at all in Georgia, after insisting that she had to put on a show for her retinue of "followers" rather than follow the path of cautious research and judicial prudence.
Philip J. Berg has never been sanctioned to anything close to that degree, and yet the Court allows Orly Taitz to represent her own shadow entities and denies him admission *pro hac vice*.
It is utterly and totally unfair that Orly Taitz is allowed her choice of counsel but that I be denied mine.  I would urge you to examine the text of 548 U.S. 140 (2006) and agree and stipulate with me that it is MORE important for a Civil Plaintiff, who bears the burden of proof in every phase of litigation, to have a personally selected counsel who has direct and personal familiarity with the whole range and potential of Orly Taitz' behavioral range.
In any event, I cannot possibly represent myself in this case and it is almost impossible that I could find any attorney as well-qualified and competent as Philip J. Berg to represent me in this case.  It is especially relevant that he is willing to accept this case on a cost & expenses + contingent fee only basis.  In effect, I will be deprived of my right to counsel if Mr. Berg is not allowed to represent me in this case, and there is no good reason that he should not be so allowed.  The Court made no findings against him or his qualifications whatsoever in its order, Docket Entry #66, and then allowed Dr. Orly Taitz to have her counsel of choice in a series of four orders with Docket Entries #67, 68, 69, 70.
For all these reasons, I would ask you all and each to stipulate with me BOTH to a suspension or extension of all deadlines, but especially the March 16, 2011, deadline for the filing of Plaintiff's Second Amended Complaint.  The hearing now set for March 21, 2011, should also be continued.  That hearing on Dr. Taitz' Motion for Sanctions is largely directed at Mr. Berg, and I cannot be expected to represent myself in that hearing without Mr. Berg.
Because a civil Plaintiff bears the burden of proof on all subjects in Civil Litigation, I think that the logic of *U.S. v. Cuauhtemoc Gonzalez-Lopez*, applies twenty-times more in civil cases than in criminal cases, where the defendant bears no burden of proof at all except as to affirmative defenses: if a criminal conviction must be vacated automatically where a defendant's choice of counsel is denied, then *a fortiori* all civil proceedings would be completely null and void if a Plaintiff's choice of counsel is denied. Dr. Orly Taitz must not be used to disqualify my choice of counsel merely because having

knowledgeable counsel, familiar with her "routine", is inconvenient to her.
If the Court does not ultimately allow Mr. Berg to appear on my behalf, I would ask that
you all agree and stipulate with me that, in essence, the denial of my choice of counsel is
a controlling issue in this case, a nearly dispositive decision, which is subject to
interlocutory appeal under 28 U.S.C. Section 1292(b):

**(b)** When a district judge, in making in a civil action an order not otherwise
appealable under this section, shall be of the opinion that such order involves a
controlling question of law as to which there is substantial ground for difference of
opinion and that an immediate appeal from the order may materially advance the
ultimate termination of the litigation, he shall so state in writing in such order.
The Court of Appeals which would have jurisdiction of an appeal of such action
may thereupon, in its discretion, permit an appeal to be taken from such order, if
application is made to it within ten days after the entry of the order: Provided,
however, That application for an appeal hereunder shall not stay proceedings in
the district court unless the district judge or the Court of Appeals or a judge
thereof shall so order.

*Charles*
*Edward*
*Lincoln, III*
*"Ich bin der*
*Geist der stets*
*verneint"*
*Deo*

*Vindice/Tierra Limpia*
*http://charleslincoln3.wordpress.com*
   *Telephone: 512-968-2500*
   *E-mail: lincoln_for_california@rocketmail.com*
   *In case of emergency call Peyton Yates Freiman (Texas)*
   *at 512-968-2415 or e-mail him at freimanthird@gmail.com*

---

**Matthew 10:34-39**

**Think not that I am come to send peace on earth: I came not to send peace,
but a sword.** *For I am come to set a man at variance against his father, and the
daughter against her mother, and the daughter in law against her mother in law.* **And
a man's foes shall be they of his own household.**

*He that loveth father or mother more than me is not worthy of me: and he that loveth
son or daughter more than me is not worthy of me.* **And he that taketh not his
cross, and followeth after me, is not worthy of me.** *He that findeth his life shall lose it:
and he that loseth his life for my sake shall find it.*

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit C:
# Declaration of
# Plaintiff Charles Edward Lincoln, III

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

13

Charles Edward Lincoln, III
603 Elmwood Place, Suite #6
Austin, Texas 78705
Telephone: (512) 968-2500
E-mail: charles.lincoln@rocketmail.com
Plaintiff *in propia persona*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA,
## SOUTHERN DIVISION

CHARLES EDWARD LINCOLN, III

                         Plaintiff,

      vs.

DAYLIGHT CHEMICAL INFOR-
MATION SYSTEMS, INC., et al,

                    Defendants.

CIVIL ACTION NUMBER:

**8:10-CV-01573 AG (PLAx)**

**Declaration of Plaintiff
Charles Edward Lincoln, III**
In Support of Motion to Reconsider
Denial of Philip J. Berg's
Motion to Appear Pro Hac Vice

## <u>Declaration of Plaintiff Charles Edward Lincoln, III</u>
## <u>In Support of Motion to Reconsider Denial of</u>
## <u>Philip J. Berg's Motion to Appear Pro Hac Vice</u>

I, Charles Edward Lincoln, III am over the age of 18 and am the Plaintiff in this civil cause. I have personal knowledge of the facts herein, and if called to do, I could and would competently testify. I am making this Declaration under the penalty of perjury of the Laws of the United States pursuant to 28 U.S.C. §1746.

1. I am the Plaintiff in above-entitled-and-numbered civil action, which I filed *in propia persona* but always with the intention of retaining counsel.

2.      In fact, I had hoped from the beginning and eventually was able to go to Philadelphia and to meet with and retain Philip J. Berg, who had represented me earlier in January-February 2010 to defend me against prior malicious and meritless charges brought against me by Dr. Orly Taitz in Florida.

3.      In the proceedings before the Honorable William P. Dimitrouleas, in the Southern District of Florida, neither Dr. Orly Taitz nor her counsel raised any objection whatsoever to the appearance of Philip J. Berg on my behalf, even though Dr. Taitz was fully aware that Lisa Liberi and Lisa Ostella assisted and collaborated with Philip J. Berg at that time.

4.      My local Counsel in that case, Ms. Inger Garcia-Armstrong, was at least theoretically subject to disqualification for conflict in that she had previously (at my request) offered to represent and collaborate with Dr. Orly Taitz as local counsel in one or more of the constitutional eligibility cases which Orly filed in Florida and Georgia (Ms. Inger Garcia-Armstrong being licensed in both states), but Orly raised no objection on that occasion.

5.      I declare and submit to the Court that Dr. Orly Taitz is equitably stopped from trying to prevent me my choice of counsel, and that the Court should not deny my choice of counsel, especially in that on the same day this Court denied Philip J. Berg's application for admission *pro hac vice,* without giving any reason whatsoever why I should not be entitled to my choice of counsel, based on special

circumstances of need, the Court allowed Orly Taitz to substitute counsel in this case without any explanation of need whatsoever.

6.     The denial of Philip J. Berg's application for admission ***pro hac vice*** denies me of effective representation in this case, because it will be all but impossible to find another attorney who would accept this case on a cost-only + contingent fee retainer basis, due to the special difficulties of litigating against Dr. Orly Taitz (including but not limited to the substantial risk that one's associates and paralegals will be harassed by Dr. Taitz, slandered on the internet, and stalked by her supporters and/or agents/employees).

7.     In my opinion, Philip J. Berg is the only attorney in the United States with adequate direct and personal, special litigation experience with Dr. Orly Taitz and her co-Defendants adequately to represent me in my lawsuit against Dr. Orly Taitz.

8.     Dr. Orly Taitz' unique (or at the very least highly idiosyncratic) patterns of conduct in and out of court require a specialized knowledge and appreciation that can only be based on direct personal experience.

9.     Mr. Gary Kreep has indicated that he is unable to represent me in this case except as a sponsor and adjunct to Philip J. Berg.

10.     I cannot prepare a Second Amended Complaint in this case alone, without assistance of counsel, and feel it would be extremely unfair of the court to require

Declaration of Plaintiff Charles Edward Lincoln, III                                                    3

me to do so, given the Court's harsh judgment of my original and First Amended Complaints which I drafted for myself.

11.     For a variety of reasons, I submit that I suffer from a special disability in this case due to personal and emotional involvement with Dr. Orly Taitz; in this context I feel I am incompetent, without assistance of counsel in this case, to effectively represent myself or meet any of the deadlines or timetables set by the recent scheduling order.

12.     On the other hand, I do have a J.D. degree and some practical litigation and courtroom experience, so I know that the Plaintiff bears the burden of proof by preponderance of the evidence in all civil cases, and that the knowledge and skill of Plaintiff's counsel are much more determinative of the outcome of a civil case than the knowledge and skill of a defendant's attorney in a criminal case, where the government bears the much heavier burden of proof beyond reasonable doubt and the Defendant will only carry the burden of certain affirmative defenses.

*13.*     For that reason I submit to the Court that if it were reversible error in *U.S. v. Cuauhtemoc Gonzalez-Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) for a criminal defendant to be denied his choice of counsel in a criminal defense case, it is ten-times more a denial of due process and equal protection of law to deny a civil plaintiff his choice of counsel.

//
//

1  //
2  //
3  //
4  //
5  //
6  //

    I declare under the penalty of perjury of the Laws of the United States and California that all of the above-and-foregoing statements of fact are true and correct, and that the opinions expressed above are my own sincerely held beliefs based on personal familiarity with the history and circumstances of this case and related matters.

    Executed this 14th day of March, 2011 in the State of California, County of Los Angeles.

Dr. Charles Edward Lincoln, III
Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit D:
## *U.S. v. Gonzalez-Lopez,*
548 U.S. 140
126 S.Ct. 2557,
165 L.Ed.2d 409 (2006)

*Plaintiff's Notice of Motion and Motion to Extend, Continue, or Suspend Deadlines, especially but not limited to
March 16, 2011, Deadline to File Plaintiff's Second Amended Complaint, and to continue the March 21, 2011 hearing date, together with
Plaintiff's Motion for Reconsideration of Doc. #66, Order Denying Philip J. Berg's Application to Appear Pro Hac Vice*

14

U.S. v. Gonzalez-Lopez, 548 U.S. 140 (2006)

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518...

Original Image of 548 U.S. 140 (PDF)

KeyCite Yellow Flag - Negative Treatment
**Declined to Extend by** King v. Tamez, 5th Cir.(Tex.), December 23, 2010

126 S.Ct. 2557
Supreme Court of the United States

UNITED STATES, Petitioner,
v.
Cuauhtemoc **GONZALEZ-LOPEZ**.

No. 05-352.Argued April 18, 2006.Decided June 26, 2006.

**Synopsis**

**Background:** Defendant was convicted of conspiring to distribute marijuana before the United States District Court for the Eastern District of Missouri, and he appealed. The Eighth Circuit Court of Appeals, 399 F.3d 924, vacated and remanded. Government petitioned for certiorari which was granted.

**Holdings:** The Supreme Court, Justice Scalia, held that:
1 where defendant's Sixth Amendment right to counsel of his choice was violated because the disqualification of his chosen counsel was erroneous, no additional showing of prejudice was required to make the violation complete, and
2 trial court's erroneous deprivation of defendant's Sixth Amendment right to choice of counsel entitled him to reversal of his conviction, as error qualified as a "structural error" not subject to review for harmlessness.

Affirmed and remanded.

Justice Alito filed dissenting opinion in which Chief Justice Roberts, and Justices Kennedy and Thomas joined.

West Headnotes (6)

**1**  **Criminal Law**⟳Choice of Counsel

110Criminal Law
110XXXICounsel
110XXXI(B)Right of Defendant to Counsel
110XXXI(B)9Choice of Counsel
110k1820In general

(Formerly 110k641.10(1))

An element of the Sixth Amendment right to counsel is the right of a defendant who does not require appointed counsel to choose who will represent him. U.S.C.A. Const.Amend. 6.

127 Cases that cite this headnote

**2**  **Criminal Law**⟳Right of Defendant to Counsel
**Criminal Law**⟳Choice of Counsel
**Criminal Law**⟳Choice of appointed counsel

110Criminal Law
110XXXICounsel
110XXXI(B)Right of Defendant to Counsel
110XXXI(B)1In General
110k1710In general
(Formerly 110k641.1)
110Criminal Law
110XXXICounsel
110XXXI(B)Right of Defendant to Counsel
110XXXI(B)9Choice of Counsel
110k1820In general
(Formerly 110k641.10(1))
110Criminal Law
110XXXICounsel
110XXXI(B)Right of Defendant to Counsel
110XXXI(B)9Choice of Counsel
110k1822Choice of appointed counsel
(Formerly 110k641.10(1))

The Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds. U.S.C.A. Const.Amend. 6.

135 Cases that cite this headnote

**3**  **Criminal Law**⟳Change in general
**Criminal Law**⟳Particular cases in general

110Criminal Law
110XXXICounsel
110XXXI(B)Right of Defendant to Counsel
110XXXI(B)9Choice of Counsel
110k1823Change in general
(Formerly 110k641.10(1), 110k641.12(1))
110Criminal Law
110XXXICounsel
110XXXI(B)Right of Defendant to Counsel
110XXXI(B)11Deprivation or Allowance of Counsel
110k1852Particular cases in general

**U.S. v. Gonzalez-Lopez, 548 U.S. 140 (2006)**

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518...

(Formerly 110k641.12(1), 110k641.10(1))

Where defendant's Sixth Amendment right to counsel of his choice was violated because the disqualification of his chosen counsel was erroneous, no additional showing of prejudice was required to make the violation complete. U.S.C.A. Const.Amend. 6.

61 Cases that cite this headnote

4       Criminal Law⟜Change in general
        Criminal Law⟜Prejudice and presumptions

110Criminal Law
110XXXICounsel
110XXXI(B)Right of Defendant to Counsel
110XXXI(B)9Choice of Counsel
110k1823Change in general
(Formerly 110k641.12(1), 110k641.10(1))
110Criminal Law
110XXXICounsel
110XXXI(B)Right of Defendant to Counsel
110XXXI(B)11Deprivation or Allowance of Counsel
110k1851Prejudice and presumptions
(Formerly 110k641.10(1), 110k641.12(1))

The Sixth Amendment right to counsel is violated when the erroneous disqualification of counsel impairs the assistance that a defendant receives at trial from the counsel that he chose. U.S.C.A. Const.Amend. 6.

12 Cases that cite this headnote

5       Criminal Law⟜Choice of Counsel

110Criminal Law
110XXXICounsel
110XXXI(B)Right of Defendant to Counsel
110XXXI(B)9Choice of Counsel
110k1820In general
(Formerly 110k641.10(1))

Where the right to be assisted by counsel of one's choice is wrongly denied, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation, since the right to select counsel of one's choice is not derived from the Sixth Amendment's purpose of ensuring a fair trial; thus, deprivation of the right is complete when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he

received. U.S.C.A. Const.Amend. 6.

301 Cases that cite this headnote

6       Criminal Law⟜Conduct of trial in general
        Criminal Law⟜Counsel for Accused

110Criminal Law
110XXIVReview
110XXIV(Q)Harmless and Reversible Error
110k1163Presumption as to Effect of Error
110k1163(2)Conduct of trial in general
110Criminal Law
110XXIVReview
110XXIV(Q)Harmless and Reversible Error
110k1166.5Conduct of Trial in General
110k1166.10Counsel for Accused
110k1166.10(1)In general

Trial court's erroneous deprivation of criminal defendant's Sixth Amendment right to choice of counsel entitled him to reversal of his conviction, as error qualified as a "structural error" not subject to review for harmlessness. U.S.C.A. Const.Amend. 6.

227 Cases that cite this headnote

**2558 *140 Syllabus***

Respondent hired attorney Low to represent him on a federal drug charge. The District Court denied Low's application for admission *pro hac vice* on the ground that he had violated a professional conduct rule and then, with one exception, prevented respondent from meeting or consulting with Low throughout the trial. The jury found respondent guilty. Reversing, the Eighth Circuit held that the District Court erred in interpreting the disciplinary rule, that the court's refusal to admit Low therefore violated respondent's Sixth Amendment right to paid counsel of his choosing, and that this violation was not subject to harmless-error review.

*Held:* A trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to reversal of his conviction. Pp. 2561 - 2566.

(a) In light of the Government's concession of erroneous deprivation, the trial court's error violated respondent's Sixth Amendment right to counsel of choice. The Court rejects the Government's contention that the violation is not "complete" unless the defendant can show that substitute counsel was ineffective within the **2559 meaning of *Strickland v. Washington,* 466 U.S. 668, 691-696, 104 S.Ct. 2052, 80 L.Ed.2d 674–i.e., that his

U.S. v. Gonzalez-Lopez, 548 U.S. 140 (2006)

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518...

performance was deficient and the defendant was prejudiced by it-or the defendant can demonstrate that substitute counsel's performance, while not deficient, was not as good as what his counsel of choice would have provided, creating a "reasonable probability that ... the result ... would have been different," *id.*, at 694, 104 S.Ct. 2052. To support these propositions, the Government emphasizes that the right to counsel is accorded to ensure that the accused receive a fair trial, *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291, and asserts that a trial is not unfair unless a defendant has been prejudiced. The right to counsel of choice, however, commands not that a trial be fair, but that a particular guarantee of fairness be provided-to wit, that the accused be defended by the counsel he believes to be best. Cf. *Crawford v. Washington,* 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177. That right was violated here; no additional showing of prejudice is required to make the violation "complete." Pp. 2561 - 2563.

(b) The Sixth Amendment violation is not subject to harmless-error analysis. Erroneous deprivation of the right to counsel of choice, "with *141 consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" *Sullivan v. Louisiana,* 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182. It "def[ies] analysis by 'harmless error' standards" because it "affec[ts] the framework within which the trial proceeds" and is not "simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302. Different attorneys will pursue different strategies with regard to myriad trial matters, and the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides to go to trial. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. This inquiry is not comparable to that required to show that a counsel's deficient performance prejudiced a defendant. Pp. 2563 - 2565.

(c) Nothing in the Court's opinion casts any doubt or places any qualification upon its previous holdings limiting the right to counsel of choice and recognizing trial courts' authority to establish criteria for admitting lawyers to argue before them. However broad a trial court's discretion may be, this Court accepts the Government's concession that the District Court erred. Pp. 2565 - 2566.

399 F.3d 924, affirmed and remanded.

SCALIA, J., delivered the opinion of the Court, in which STEVENS, SOUTER, GINSBURG, and BREYER, JJ., joined. ALITO, J., filed a dissenting opinion, in which ROBERTS, C. J., and KENNEDY and THOMAS, JJ.,

joined, *post,* p. 2566.

**Attorneys and Law Firms**

Michael R. Dreeben, for Petitioner.

Paul D. Clement, Solicitor General, Washington, D.C., for United States.

Pamela S. Karlan, Stanford, CA, Joseph H. Low, IV, Law Firm of Joseph H. Low, IV, Newport Beach, CA, Jeffrey L. Fisher, Davis Wright Tremaine LLP, Seattle, WA, Karl W. Dickhaus, J. Richard McEachern, McEachern & Dickhaus, LC, St. Louis, MO, Thomas C. Goldstein, Amy Howe, Kevin K. Russell, Goldstein & Howe, P.C., Washington, D.C., for Respondent.

**Opinion**

Justice SCALIA delivered the opinion of the Court.

*142 We must decide whether a trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to a reversal of his conviction.

**I**

Respondent Cuauhtemoc **Gonzalez-Lopez** was charged in the Eastern District of Missouri with conspiracy to distribute more than 100 kilograms of marijuana. His family hired attorney John Fahle to represent him. After the arraignment, respondent called a California attorney, Joseph Low, to discuss whether Low would represent him, either in addition to or instead of Fahle. Low flew from California to meet with respondent, who hired him.

Some time later, Low and Fahle represented respondent at an evidentiary hearing before a Magistrate Judge. The Magistrate Judge accepted Low's provisional entry of appearance and permitted Low to participate in the hearing on the condition that he immediately file a motion for admission *pro hac vice.* During the hearing, however, the Magistrate Judge revoked the provisional acceptance on the ground that, by passing notes to Fahle, Low had violated a court rule restricting the cross-examination of a witness to one counsel.

The following week, respondent informed Fahle that he wanted Low to be his only attorney. Low then filed an application for admission *pro hac vice.* The District Court denied his application without comment. A month later, Low filed a second application, which the District Court again denied without explanation. Low's appeal, in the form of an application for a writ of mandamus, was

U.S. v. Gonzalez-Lopez, 548 U.S. 140 (2006)

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518...

dismissed by the United States Court of Appeals for the Eighth Circuit.

Fahle filed a motion to withdraw as counsel and for a show-cause hearing to consider sanctions against Low. Fahle asserted that, by contacting respondent while respondent was represented by Fahle, Low violated *143 Mo. Rule of Professional Conduct 4-4.2 (2003), which prohibits a lawyer "[i]n representing a client" from "communicat[ing] about the subject of the representation with a party ... represented by another lawyer" without that lawyer's consent. Low filed a motion to strike Fahle's motion. The District Court granted Fahle's motion to withdraw and granted a continuance so that respondent could find new representation. Respondent retained a local attorney, Karl Dickhaus, for the trial. The District Court then denied Low's motion to strike and, for the first time, explained that it had denied Low's motions for admission pro hac vice primarily because, in a separate case before it, Low had violated Rule 4-4.2 by communicating with a represented party.

The case proceeded to trial, and Dickhaus represented respondent. Low again moved for admission and was again denied. The court also denied Dickhaus's request to have Low at counsel table with him and ordered Low to sit in the audience and have no contact with Dickhaus during the proceedings. To enforce the court's order, a United States Marshal sat between Low and Dickhaus at trial. Respondent was unable to meet with Low throughout the trial, except for once on the last night. The jury found respondent guilty.

After trial, the District Court granted Fahle's motion for sanctions against Low. It read Rule 4-4.2 to forbid Low's contact with respondent without Fahle's permission. **2561 It also reiterated that it had denied Low's motions for admission on the ground that Low had violated the same Rule in a separate matter.

Respondent appealed, and the Eighth Circuit vacated the conviction. 399 F.3d 924 (C.A.8 2005). The court first held that the District Court erred in interpreting Rule 4-4.2 to prohibit Low's conduct both in this case and in the separate matter on which the District Court based its denials of his admission motions. The District Court's denials of these motions were therefore erroneous and violated respondent's *144 Sixth Amendment right to paid counsel of his choosing. See id., at 928-932. The court then concluded that this Sixth Amendment violation was not subject to harmless-error review. See id., at 932-935. We granted certiorari. 546 U.S. 1085, 126 S.Ct. 979, 163 L.Ed.2d 722 (2006).

II

1 2 The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." We have previously held that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him. See Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Cf. Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932) ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice"). The Government here agrees, as it has previously, that "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-625, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). To be sure, the right to counsel of choice "is circumscribed in several important respects." Wheat, supra, at 159, 108 S.Ct. 1692. But the Government does not dispute the Eighth Circuit's conclusion in this case that the District Court erroneously deprived respondent of his counsel of choice.

3 The Government contends, however, that the Sixth Amendment violation is not "complete" unless the defendant can show that substitute counsel was ineffective within the meaning of Strickland v. Washington, 466 U.S. 668, 691-696, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)-i.e., that substitute counsel's performance was deficient and the defendant was prejudiced by it. In the alternative, the Government contends that the defendant must at least demonstrate that his counsel of choice would have pursued a different strategy that would have created a "reasonable *145 probability that ... the result of the proceedings would have been different," id., at 694, 104 S.Ct. 2052-in other words, that he was prejudiced within the meaning of Strickland by the denial of his counsel of choice even if substitute counsel's performance was not constitutionally deficient.1 **2562 To support these propositions, the Government points to our prior cases, which note that the right to counsel "has been accorded ... not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." Mickens v. Taylor, 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (internal quotation marks omitted). A trial is not unfair and thus the Sixth Amendment is not violated, the Government reasons, unless a defendant has been prejudiced.

Stated as broadly as this, the Government's argument in effect reads the Sixth Amendment as a more detailed version of the Due Process Clause-and then proceeds to give no effect to the details. It is true enough that the purpose of the rights set forth in that Amendment is to ensure a fair trial; but it does not follow that the rights can

U.S. v. Gonzalez-Lopez, 548 U.S. 140 (2006)

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518...

be disregarded so long as the trial is, on the whole, fair. What the Government urges upon us here is what was urged upon us (successfully, at one time, see *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)) with regard to the Sixth Amendment's right of confrontation-a line of reasoning that "abstracts from the right to its purposes, and then eliminates the right." *Maryland v. Craig,* 497 U.S. 836, 862, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (SCALIA, J., dissenting). *146 Since, it was argued, the purpose of the Confrontation Clause was to ensure the reliability of evidence, so long as the testimonial hearsay bore "indicia of reliability," the Confrontation Clause was not violated. See *Roberts, supra,* at 65-66, 100 S.Ct. 2531. We rejected that argument (and our prior cases that had accepted it) in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), saying that the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.,* at 61, 124 S.Ct. 1354.

4 So also with the Sixth Amendment right to counsel of choice. It commands, not that a trial be fair, but that a particular guarantee of fairness be provided-to wit, that the accused be defended by the counsel he believes to be best. "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause." *Strickland, supra,* at 684-685, 104 S.Ct. 2052. In sum, the right at stake here is the right to counsel of choice, not the right to a fair trial; and that right was violated because the deprivation of counsel was erroneous. No additional showing of prejudice is required to make the violation "complete."2

The cases the Government relies on involve the right to the effective assistance of counsel, the violation of which generally requires a defendant to establish prejudice. See, *e.g., *147 Strickland,* 466 U.S., at 694, 104 S.Ct. 2052; *Mickens, supra,* at 166, 122 S.Ct. 1237; *United States v. Cronic,* **2563 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The earliest case generally cited for the proposition that "the right to counsel is the right to the effective assistance of counsel," *McMann v. Richardson,* 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), was based on the Due Process Clause rather than on the Sixth Amendment, see *Powell,* 287 U.S., at 57, 53 S.Ct. 55 (cited in, *e.g., McMann, supra,* at 771, n. 14, 90 S.Ct. 1441). And even our recognition of the right to effective counsel within the Sixth Amendment was a consequence of our perception that representation by counsel "is critical to the ability of the adversarial system to produce just results." *Strickland, supra,* at 685, 104 S.Ct. 2052. Having derived the right to effective representation from the purpose of ensuring a fair trial, we have, logically enough, also derived the limits of that right from that same purpose. See *Mickens, supra,* at 166,

122 S.Ct. 1237. The requirement that a defendant show prejudice in effective representation cases arises from the very nature of the specific element of the right to counsel at issue there-*effective* (not mistake-free) representation. Counsel cannot be "ineffective" unless his mistakes have harmed the defense (or, at least, unless it is reasonably likely that they have). Thus, a violation of the Sixth Amendment right to *effective* representation is not "complete" until the defendant is prejudiced. See *Strickland, supra,* at 685, 104 S.Ct. 2052.

5 The right to select counsel of one's choice, by contrast, has never been derived from the Sixth Amendment's purpose of ensuring a fair trial.3 It has been regarded as the root *148 meaning of the constitutional guarantee. See *Wheat,* 486 U.S., at 159, 108 S.Ct. 1692; *Andersen v. Treat,* 172 U.S. 24, 19 S.Ct. 67, 43 L.Ed. 351 (1898). See generally W. Beaney, The Right to Counsel in American Courts 18-24, 27-33 (1955). Cf. *Powell, supra,* at 53, 53 S.Ct. 55. Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice-which is the right to a particular lawyer regardless of comparative effectiveness-with the right to effective counsel-which imposes a baseline requirement ‿of competence on whatever lawyer is chosen or appointed.

### III

6 Having concluded, in light of the Government's concession of erroneous deprivation, that the trial court violated respondent's Sixth Amendment right to counsel of choice, we must consider whether this error is subject to review for harmlessness. In *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), we divided constitutional errors into two classes. The first we called "trial error," because the errors "occurred during presentation of the case to the jury" and their effect may "be quantitatively assessed in the context of other evidence **2564 presented in order to determine whether [they were] harmless beyond a reasonable doubt." *Id.,* at 307-308, 111 S.Ct. 1246 (internal quotation marks omitted). These include "most constitutional errors." *Id.,* at 306, 111 S.Ct. 1246. The second class of constitutional error we called "structural defects." These "defy analysis by 'harmless-error' standards" because they "affec[t] the framework within which the trial proceeds," and are not "simply an error in the trial process itself." *149 Id.,* at

309-310, 111 S.Ct. 1246.4 See also *Neder v. United States,* 527 U.S. 1, 7-9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Such errors include the denial of counsel, see *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the denial of the right of self-representation, see *McKaskle v. Wiggins,* 465 U.S. 168, 177-178, n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the denial of the right to public trial, see *Waller v. Georgia,* 467 U.S. 39, 49, n. 9, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction, see *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

*\*150* We have little trouble concluding that erroneous deprivation of the right to counsel of choice, "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.' " *Id.,* at 282, 113 S.Ct. 2078. Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the "framework within which the trial proceeds," *\*\*2565 Fulminante, supra,* at 310, 111 S.Ct. 1246-or indeed on whether it proceeds at all. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.

The Government acknowledges that the deprivation of choice of counsel pervades the entire trial, but points out that counsel's ineffectiveness may also do so and yet we do not allow reversal of a conviction for that reason without a showing of prejudice. But the requirement of showing prejudice in ineffectiveness claims stems from the very definition of the right at issue; it is not a matter of showing that the violation was harmless, but of showing that a violation of the right to effective representation *occurred.* A choice-of-counsel violation occurs *whenever* the defendant's choice is wrongfully denied. Moreover, if and when counsel's ineffectiveness "pervades" a trial, it does so (to the extent we can detect it) through identifiable mistakes. We can assess how *\*151* those mistakes affected the outcome. To determine the effect of wrongful denial of choice of counsel, however, we would not be looking for mistakes committed by the actual counsel, but for differences in the defense that would have been made by the rejected counsel-in matters ranging from questions asked on *voir dire* and cross-examination to such intangibles as argument style and relationship with the prosecutors. We would have to speculate upon what matters the rejected counsel would have handled differently-or indeed, would have handled the same but with the benefit of a more jury-pleasing courtroom style or a longstanding relationship of trust with the prosecutors. And then we would have to speculate upon what effect those different choices or different intangibles might have had. The difficulties of conducting the two assessments of prejudice are not remotely comparable.5

## IV

Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them. As the dissent too discusses, *post,* at 2567, the right to counsel of choice does not extend to defendants who require counsel to be appointed for them. See *Wheat,* 486 U.S., at 159, 108 S.Ct. 1692; *Caplin & Drysdale,* 491 U.S., at 624, 626, 109 S.Ct. 2646. Nor *\*152* may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation. See *Wheat,* 486 U.S., at 159-160, 108 S.Ct. 1692. We have recognized a trial court's wide latitude in balancing the right *\*\*2566* to counsel of choice against the needs of fairness, *id.,* at 163-164, 108 S.Ct. 1692, and against the demands of its calendar, *Morris v. Slappy,* 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat, supra,* at 160, 108 S.Ct. 1692. None of these limitations on the right to choose one's counsel is relevant here. This is not a case about a court's power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel. However broad a court's discretion may be, the Government has conceded that the District Court here erred when it denied respondent his choice of counsel. Accepting that premise, we hold that the error violated respondent's Sixth Amendment right to counsel of choice and that this violation is not subject to harmless-error analysis.

\* \* \*

U.S. v. Gonzalez-Lopez, 548 U.S. 140 (2006)

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518...

The judgment of the Court of Appeals is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Justice ALITO, with whom THE CHIEF JUSTICE, Justice KENNEDY, and Justice THOMAS join, dissenting.

I disagree with the Court's conclusion that a criminal conviction must automatically be reversed whenever a trial court errs in applying its rules regarding *pro hac vice* admissions and as a result prevents a defendant from being represented at trial by the defendant's first-choice attorney. Instead, *153 a defendant should be required to make at least *some* showing that the trial court's erroneous ruling adversely affected the quality of assistance that the defendant received. In my view, the majority's contrary holding is based on an incorrect interpretation of the Sixth Amendment and a misapplication of harmless-error principles. I respectfully dissent.

**I**

The majority makes a subtle but important mistake at the outset in its characterization of what the Sixth Amendment guarantees. The majority states that the Sixth Amendment protects "the right of a defendant who does not require appointed counsel to choose who will represent him." *Ante*, at 2561. What the Sixth Amendment actually protects, however, is the right to have *the assistance* that the defendant's counsel of choice is able to provide. It follows that if the erroneous disqualification of a defendant's counsel of choice does not impair the assistance that a defendant receives at trial, there is no violation of the Sixth Amendment.1

The language of the Sixth Amendment supports this interpretation. The Assistance of Counsel Clause focuses on what a defendant is entitled to receive ("Assistance"), rather than on the identity of the provider. The background of the adoption of the Sixth Amendment points in the same direction. The specific evil against which the Assistance of Counsel Clause **2567 was aimed was the English common-law rule severely limiting a felony defendant's ability to be assisted by counsel. *United States v. Ash*, 413 U.S. 300, 306, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). "[T]he core purpose of the counsel guarantee was to assure 'Assistance' at trial," *id.*, at 309, 93 S.Ct. 2568, and thereby "to assure fairness in the adversary criminal process," *United States v. *154 Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d

564 (1981). It was not "the essential aim of the Amendment ... to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); cf. *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) ("[W]e reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel").

There is no doubt, of course, that the right "to have the Assistance of Counsel" carries with it a limited right to be represented by counsel of choice. At the time of the adoption of the Bill of Rights, when the availability of appointed counsel was generally limited,2 that is how the right inevitably played out: A defendant's right to have the assistance of counsel necessarily meant the right to have the assistance of whatever counsel the defendant was able to secure. But from the beginning, the right to counsel of choice has been circumscribed.

For one thing, a defendant's choice of counsel has always been restricted by the rules governing admission to practice before the court in question. The Judiciary Act of 1789 made this clear, providing that parties "in all the courts of the United States" had the right to "the assistance of such counsel or attorneys at law as by the rules of the said courts respectively shall be permitted to manage and conduct causes therein." Ch. 20, § 35, 1 Stat. 92. Therefore, if a defendant's first-choice attorney was not eligible to appear under the rules of a particular court, the defendant had no right to be represented by that attorney. Indeed, if a defendant's top 10 or top 25 choices were all attorneys who were not eligible to appear in the court in question, the defendant had no right to be represented by any of them. Today, rules governing admission to practice before particular courts continue to limit the ability of a criminal defendant *155 to be represented by counsel of choice. See *Wheat, supra*, at 159, 108 S.Ct. 1692.

The right to counsel of choice is also limited by conflict-of-interest rules. Even if a defendant is aware that his or her attorney of choice has a conflict, and even if the defendant is eager to waive any objection, the defendant has no constitutional right to be represented by that attorney. See 486 U.S., at 159-160, 108 S.Ct. 1692.

Similarly, the right to be represented by counsel of choice can be limited by mundane case-management considerations. If a trial judge schedules a trial to begin on a particular date and defendant's counsel of choice is already committed for other trials until some time thereafter, the trial judge has discretion under appropriate circumstances to refuse to postpone the trial date and thereby, in effect, to force the defendant to forgo counsel of choice. See, *e.g.*, *Slappy, supra*; *United States v. Hughey*, 147 F.3d 423, 428-431 (C.A.5 1998).

**U.S. v. Gonzalez-Lopez, 548 U.S. 140 (2006)**

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518...

These limitations on the right to counsel of choice are tolerable because the focus of **2568 the right is the quality of the representation that the defendant receives, not the identity of the attorney who provides the representation. Limiting a defendant to those attorneys who are willing, available, and eligible to represent the defendant still leaves a defendant with a pool of attorneys to choose from-and, in most jurisdictions today, a large and diverse pool. Thus, these restrictions generally have no adverse effect on a defendant's ability to secure the best assistance that the defendant's circumstances permit.

Because the Sixth Amendment focuses on the quality of the assistance that counsel of choice would have provided, I would hold that the erroneous disqualification of counsel does not violate the Sixth Amendment unless the ruling diminishes the quality of assistance that the defendant would have otherwise received. This would not require a defendant to show that the second-choice attorney was constitutionally ineffective within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) *156 Rather, the defendant would be entitled to a new trial if the defendant could show "an identifiable difference in the quality of representation between the disqualified counsel and the attorney who represents the defendant at trial." *Rodriguez v. Chandler,* 382 F.3d 670, 675 (C.A.7 2004), cert. denied, 543 U.S. 1156, 125 S.Ct. 1303, 161 L.Ed.2d 124 (2005).

This approach is fully consistent with our prior decisions. We have never held that the erroneous disqualification of counsel violates the Sixth Amendment when there is no prejudice, and while we have stated in several cases that the Sixth Amendment protects a defendant's right to counsel of choice, see *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624-625, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *Wheat, supra,* at 159, 108 S.Ct. 1692; *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932), we had no occasion in those cases to consider whether a violation of this right can be shown where there is no prejudice. Nor do our opinions in those cases refer to that question. It is therefore unreasonable to read our general statements regarding counsel of choice as addressing the issue of prejudice.3

**2569 *157 II

But even accepting, as the majority holds, that the erroneous disqualification of counsel of choice always violates the Sixth Amendment, it still would not follow that reversal is required in all cases. The Constitution, by its terms, does not mandate any particular remedy for violations of its own provisions. Instead, we are bound in this case by Federal Rule of Criminal Procedure 52(a),

which instructs federal courts to "disregar[d]" "[a]ny error ... which does not affect substantial rights." See also 28 U.S.C. § 2111; *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The only exceptions we have recognized to this rule have been for "a limited class of fundamental constitutional errors that 'defy analysis by "harmless error" standards.' " *Neder v. United States,* 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)); see also *Chapman, supra,* at 23, 87 S.Ct. 824. "Such errors ... 'necessarily render a trial fundamentally unfair' [and] deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle *158 for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair.' " *Neder, supra,* at 8-9, 119 S.Ct. 1827 (quoting *Rose v. Clark,* 478 U.S. 570, 577-578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); second omission in original); see also *ante,* at 2564 (listing such errors).

Thus, in *Neder,* we rejected the argument that the omission of an element of a crime in a jury instruction "*necessarily* render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." 527 U.S., at 9, 119 S.Ct. 1827. In fact, in that case, "quite the opposite [was] true: Neder was tried before an impartial judge, under the correct standard of proof and with the assistance of counsel; a fairly selected, impartial jury was instructed to consider all of the evidence and argument in respect to Neder's defense. ..." *Ibid.*

Neder's situation-with an impartial judge, the correct standard of proof, assistance of counsel, and a fair jury-is much like respondent's. Fundamental unfairness does not inexorably follow from the denial of first-choice counsel. The "decision to retain a particular lawyer" is "often uninformed," *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); a defendant's second-choice lawyer may thus turn out to be better than the defendant's first-choice lawyer. More often, a defendant's first- and second-choice lawyers may be simply indistinguishable. These possibilities would not justify violating the right to choice of counsel, but they do make me hard put to characterize the violation as "*always* render[ing] a trial unfair," *Neder, supra,* at 9, 119 S.Ct. 1827. Fairness may not limit the right, see *ante,* at 2562, but it does inform the remedy.

Nor is it always or nearly always impossible to determine whether the first choice **2570 would have provided better representation than the second choice. There are undoubtedly cases in which the prosecution would have little difficulty showing that the second-choice attorney was better qualified than or at least as qualified as the defendant's initial choice, *159 and there are other cases in which it will be evident to the trial judge that any

**U.S. v. Gonzalez-Lopez, 548 U.S. 140 (2006)**

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518...

difference in ability or strategy could not have possibly affected the outcome of the trial.

Requiring a defendant to fall back on a second-choice attorney is not comparable to denying a defendant the right to be represented by counsel at all. Refusing to permit a defendant to receive the assistance of any counsel is the epitome of fundamental unfairness, and as far as the effect on the outcome is concerned, it is much more difficult to assess the effect of a complete denial of counsel than it is to assess the effect of merely preventing representation by the defendant's first-choice attorney. To be sure, when the effect of an erroneous disqualification is hard to gauge, the prosecution will be unable to meet its burden of showing that the error was harmless beyond a reasonable doubt. But that does not justify eliminating the possibility of showing harmless error in all cases.

The majority's focus on the "trial error"/"structural defect" dichotomy is misleading. In *Fulminante*, we used these terms to denote two poles of constitutional error that had appeared in prior cases; trial errors always lead to harmless-error review, while structural defects always lead to automatic reversal. See 499 U.S., at 306-310, 111 S.Ct. 1246. We did not suggest that trial errors are the *only* sorts of errors amenable to harmless-error review, or that *all* errors "affecting the framework within which the trial proceeds," *id.*, at 310, 111 S.Ct. 1246, are structural. The touchstone of structural error is fundamental unfairness and unreliability. Automatic reversal is strong medicine that should be reserved for constitutional errors that "*always* " or "*necessarily*," *Neder, supra,* at 9, 119 S.Ct. 1827 (emphasis in original), produce such unfairness.

### III

Either of the two courses outlined above-requiring at least some showing of prejudice, or engaging in harmless-error *160 review-would avoid the anomalous and unjustifiable consequences that follow from the majority's two-part rule of error without prejudice followed by automatic reversal.

Under the majority's holding, a defendant who is erroneously required to go to trial with a second-choice attorney is automatically entitled to a new trial even if this attorney performed brilliantly. By contrast, a defendant whose attorney was ineffective in the constitutional sense (*i.e.,* "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment," *Strickland,* 466 U.S., at 687, 104 S.Ct. 2052) cannot obtain relief without showing prejudice.

Under the majority's holding, a trial court may adopt rules

severely restricting *pro hac vice* admissions, cf. *Leis v. Flynt*, 439 U.S. 438, 443, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) *(per curiam),* but if it adopts a generous rule and then errs in interpreting or applying it, the error automatically requires reversal of any conviction, regardless of whether the erroneous ruling had any effect on the defendant.

Under the majority's holding, some defendants will be awarded new trials even though it is clear that the erroneous disqualification of their first-choice counsel did not prejudice them in the least. Suppose, for example, that a defendant is initially represented by an attorney who previously **2571 represented the defendant in civil matters and who has little criminal experience. Suppose that this attorney is erroneously disqualified and that the defendant is then able to secure the services of a nationally acclaimed and highly experienced criminal defense attorney who secures a surprisingly favorable result at trial-for instance, acquittal on most but not all counts. Under the majority's holding, the trial court's erroneous ruling automatically means that the Sixth Amendment was violated-even if the defendant makes no attempt to argue that the disqualified attorney would have done a better job. In fact, the defendant would still be entitled to *161 a new trial on the counts of conviction even if the defendant publicly proclaimed after the verdict that the second attorney had provided better representation than any other attorney in the country could have possibly done.

Cases as stark as the above hypothetical are unlikely, but there are certainly cases in which the erroneous disqualification of a defendant's first-choice counsel neither seriously upsets the defendant's preferences nor impairs the defendant's representation at trial. As noted above, a defendant's second-choice lawyer may sometimes be better than the defendant's first-choice lawyer. Defendants who retain counsel are frequently forced to choose among attorneys whom they do not know and about whom they have limited information, and thus a defendant may not have a strong preference for any one of the candidates. In addition, if all of the attorneys considered charge roughly comparable fees, they may also be roughly comparable in experience and ability. Under these circumstances, the erroneous disqualification of a defendant's first-choice attorney may simply mean that the defendant will be represented by an attorney whom the defendant very nearly chose initially and who is able to provide representation that is just as good as that which would have been furnished by the disqualified attorney. In light of these realities, mandating reversal without even a minimal showing of prejudice on the part of the defendant is unwarranted.

The consequences of the majority's holding are particularly severe in the federal system and in other court

U.S. v. Gonzalez-Lopez, 548 U.S. 140 (2006)

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518...

systems that do not allow a defendant to take an interlocutory appeal when counsel is disqualified. See *Flanagan v. United States,* 465 U.S. 259, 260, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). Under such systems, appellate review typically occurs after the defendant has been tried and convicted. At that point, if an appellate court concludes that the trial judge made a marginally incorrect ruling in applying its own *pro hac vice* rules, the appellate court *162 has no alternative but to order a new trial-even if there is not even any claim of prejudice. The Sixth Amendment does not require such results.

Because I believe that some showing of prejudice is required to establish a violation of the Sixth Amendment, I would vacate and remand to let the Court of Appeals determine whether there was prejudice. However,

assuming for the sake of argument that no prejudice is required, I believe that such a violation, like most constitutional violations, is amenable to harmless-error review. Our statutes demand it, and our precedents do not bar it. I would then vacate and remand to let the Court of Appeals determine whether the error was harmless in this case.

Parallel Citations

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518, 06 Daily Journal D.A.R. 8085, 33 A.L.R. Fed. 2d 661

Footnotes

* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

1 The dissent proposes yet a third standard-viz., that the defendant must show " 'an identifiable difference in the quality of representation between the disqualified counsel and the attorney who represents the defendant at trial.' " *Post,* at 2568 (opinion of ALITO, J.). That proposal suffers from the same infirmities (outlined later in text) that beset the Government's positions. In addition, however, it greatly impairs the clarity of the law. How is a lower-court judge to know what an "identifiable difference" consists of? Whereas the Government at least appeals to *Strickland* and the case law under it, the most the dissent can claim by way of precedential support for its rule is that it is "consistent with" cases that never discussed the issue of prejudice. *Post,* at 2568.

2 The dissent resists giving effect to our cases' recognition, and the Government's concession, that a defendant has a right to be defended by counsel of his choosing. It argues that because the Sixth Amendment guarantees the right to the "assistance of counsel," it is not violated unless "the erroneous disqualification of a defendant's counsel of choice ... impair[s] the assistance that a defendant receives at trial." *Post,* at 2566. But if our cases (and the Government's concession) mean anything, it is that the Sixth Amendment is violated when the erroneous disqualification of counsel "impair[s] the assistance that a defendant receives at trial *[from the counsel that he chose]."*

3 In *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), where we formulated the right to counsel of choice and discussed some of the limitations upon it, we took note of the overarching purpose of fair trial in holding that the trial court has discretion to disallow a first choice of counsel that would create serious risk of conflict of interest. *Id.,* at 159, 108 S.Ct. 1692. It is one thing to conclude that the right to counsel of choice may be limited by the need for fair trial, but quite another to say that the right does not exist unless its denial renders the trial unfair.

4 The dissent criticizes us for our trial error/structural defect dichotomy, asserting that *Fulminante* never said that "trial errors are the *only* sorts of errors amenable to harmless-error review, or that *all* errors affecting the framework within which the trial proceeds are structural," *post,* at 2570 (internal quotation marks and citation omitted). Although it is hard to read that case as doing anything other than dividing constitutional error into two comprehensive categories, our ensuing analysis in fact relies neither upon such comprehensiveness nor upon trial error as the touchstone for the availability of harmless-error review. Rather, here, as we have done in the past, we rest our conclusion of structural error upon the difficulty of assessing the effect of the error. See *Waller v. Georgia,* 467 U.S. 39, 49, n. 9, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (violation of the public-trial guarantee is not subject to harmlessness review because "the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance"); *Vasquez v. Hillery,* 474 U.S. 254, 263, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) ("[W]hen a petit jury has been selected upon improper criteria or has been exposed to prejudicial publicity, we have required reversal of the conviction because the effect of the violation cannot be ascertained"). The dissent would use "fundamental unfairness" as the sole criterion of structural error, and cites a case in which that was the determining factor, see *Neder v. United States,* 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoted by the dissent, *post,* at 2569). But this has not been the only criterion we have used. In addition to the above cases using difficulty of assessment as the test, we have also relied on the irrelevance of harmlessness, see *McKaskle v. Wiggins,* 465 U.S. 168, 177, n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ("Since the right to self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis"). Thus, it is the dissent that creates a single, inflexible criterion, inconsistent with the reasoning of our precedents, when it asserts that *only* those errors that *always* or *necessarily* render a trial fundamentally unfair and unreliable are structural, *post,* at 2570.

**U.S. v. Gonzalez-Lopez, 548 U.S. 140 (2006)**

126 S.Ct. 2557, 165 L.Ed.2d 409, 74 USLW 4453, 06 Cal. Daily Op. Serv. 5518...

5     In its discussion of the analysis that would be required to conduct harmless-error review, the dissent focuses on which counsel was "better." See *post*, at 2569 - 2570. This focus has the effect of making the analysis look achievable, but it is fundamentally inconsistent with the principle (which the dissent purports to accept for the sake of argument) that the Sixth Amendment can be violated without a showing of harm to the quality of representation. Cf. *McKaskle, supra*, at 177, n. 8, 104 S.Ct. 944. By framing its inquiry in these terms and expressing indignation at the thought that a defendant may receive a new trial when his actual counsel was at least as effective as the one he wanted, the dissent betrays its misunderstanding of the nature of the right to counsel of choice and its confusion of this right with the right to effective assistance of counsel.

1     This view is consistent with the Government's concession that "[t]he Sixth Amendment ... encompasses a non-indigent defendant's right to select counsel who will represent him in a criminal prosecution," Brief for United States 11, though this right is "circumscribed in several important respects," *id.,* at 12 (internal quotation marks omitted).

2     See Act of Apr. 30, 1790, ch. 9, § 29, 1 Stat. 118 (providing for appointment of counsel in capital cases); *Betts v. Brady,* 316 U.S. 455, 467, n. 20, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) (surveying state statutes).

3     *Powell* is the case generally cited as first noting a defendant's right to counsel of choice. *Powell* involved an infamous trial in which the defendants were prevented from obtaining any counsel of their choice and were instead constrained to proceed with court-appointed counsel of dubious effectiveness. We held that this denied them due process and that "a fair opportunity to secure counsel of [one's] own choice" is a necessary concomitant of the right to counsel. 287 U.S., at 53, 53 S.Ct. 55; cf. *id.,* at 71, 53 S.Ct. 55 ("[T]he failure of the trial court to give [petitioners] reasonable time and opportunity to secure counsel was a clear denial of due process"). It is clear from the facts of the case that we were referring to the denial of the opportunity to choose *any* counsel, and we certainly said nothing to suggest that a violation of the right to counsel of choice could be established without any showing of prejudice.

In *Wheat,* we held that the trial judge had not erred in declining the defendant's waiver of his right to conflict-free counsel, and therefore we had no need to consider whether an incorrect ruling would have required reversal of the defendant's conviction in the absence of a showing of prejudice. We noted that "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment," 486 U.S., at 159, 108 S.Ct. 1692, but we went on to stress that this right "is circumscribed in several important respects," *ibid.,* including by the requirement of bar membership and rules against conflicts of interest. *Wheat* did not suggest that a violation of the limited Sixth Amendment right to counsel of choice can be established without showing prejudice, and our statements about the Sixth Amendment's "purpose" and "essential aim"-providing effective advocacy and a fair trial, *ibid.*-suggest the opposite.

Finally, in *Caplin & Drysdale,* we held that the challenged action of the trial judge-entering an order forfeiting funds that the defendant had earmarked for use in paying his attorneys-had been proper, and, accordingly, we had no occasion to address the issue of prejudice. We recognized that "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds," 491 U.S., at 624-625, 109 S.Ct. 2646, but we added that "[w]hatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of his choosing, that protection does not go beyond 'the individual's right to spend his own money to obtain the advice and assistance of ... counsel,' " *id.,* at 626, 109 S.Ct. 2646 (omission in original).

**End of Document**                            © 2011 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5297748
Only the Westlaw citation is currently available.
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4. (Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals,
Fifth Circuit.

Willie Frank KING, Petitioner-Appellant
v.
Warden Rebecca TAMEZ, Respondent-Appellee.

No. 10-10120Summary Calendar.Dec. 23, 2010.

**Attorneys and Law Firms**

Dallas Craig Hughes, Houston, TX, for Petitioner-Appellant.

Appeal from the United States District Court for the Northern District of Texas, USDC No. 3:09-CV-564.

Before JONES, Chief Judge, and SMITH and CLEMENT, Circuit Judges.

**Opinion**
PER CURIAM:*

*1 Willie Frank King, federal prisoner # 29510-077, appeals the district court's denial of his 21 U.S.C. § 2241 petition, challenging his convictions for several drug-related crimes and resulting 328-month sentence. In his petition, King alleged that he was denied his counsel of choice, in violation of his Sixth Amendment rights as articulated in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). King argues that the district court erred in determining that he had not met the requirements for proceeding under § 2241 pursuant to the savings clause of 28 U.S.C. § 2255(e).

To challenge the validity of his conviction and sentence through a § 2241 petition, King must affirmatively show that the remedy under § 2255 would be "inadequate or ineffective to test the legality of his detention." § 2255(e); *Reyes-Requena v. United States*, 243 F.3d 893, 901 (5th Cir.2001). This requires him to make a showing of both actual innocence and retroactivity. *Reyes-Requena*, 243 F.3d at 903-04. Specifically, he must establish that his claim (1) "is based on a retroactively applicable Supreme Court decision which establishes that [he] may have been convicted of a nonexistent offense" and (2) "was foreclosed by circuit law at the time when the claim should have been raised in [his] trial, appeal, or first § 2255 motion." *Id.* at 904.

King devotes his brief to the argument that *Gonzalez-Lopez* should apply retroactively to cases on collateral review. He makes no argument that he is actually innocent. Moreover, *Gonzalez-Lopez* does not establish that his convictions are for nonexistent offenses. *See* 548 U.S. at 151-52. Therefore, we do not reach the question whether *Gonzalez-Lopez* is retroactively applicable to cases on collateral review because King cannot meet his burden regardless. *See Reyes-Requena*, 243 F.3d at 904. The district court's judgment is AFFIRMED. *See* § 2255(h); 28 U.S.C. § 2244(b)(3)(C); *Reyes-Requena*, 243 F.3d at 897-98. King is CAUTIONED that future attempts to circumvent the successive-motion requirements of § 2255 will invite the imposition of sanctions.

Footnotes
\*      Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**End of Document**                    © 2011 Thomson Reuters. No claim to original U.S. Government Works.